

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1159-07

**ALFREDO LEYVA PECINA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**KELLER, P.J., filed a dissenting opinion.**

I think I read the record a little bit differently than the Court does. When Judge Maddock approached appellant's bedside, she pointed to the detectives and said, "They are here. They would like to speak to you." Appellant gave some sort of acknowledgement, nodding his head or saying "yes." The judge then proceeded with the magistration process. After giving the required warnings, she asked appellant if he wanted a court-appointed attorney, and he said, "Yes." She then asked, "Do you *still* want to talk to them?"[1] Again, appellant answered, "Yes."

Indisputably, appellant's "yes" answer to the first question constituted an invocation of his

---

[1] Emphasis mine.

right to counsel, but the scope of that invocation is another matter. It is possible for a suspect to engage in a "limited" invocation of his right to counsel that permits communication with the police without an attorney present.[2] When there is ambiguity as to whether the suspect is invoking counsel at all, the police are not required to clarify the ambiguous remarks and may assume that the defendant has not in fact invoked his right to counsel.[3] However, when the right to counsel has been clearly invoked, and the ambiguity is to the scope of that invocation, the suspect's request must be interpreted broadly rather than narrowly.[4] Though the Supreme Court has not explicitly held that clarifying questions can be used to cure ambiguity as to the scope of the suspect's invocation,[5] comments by the Court in *Davis* strongly suggest it: "[I]t will often be good police practice for the interviewing officers to clarify whether or not [the suspect] actually wants an attorney . . . . Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, *and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel.*"[6]

Before invoking his right to counsel, appellant gave an affirmative response to Judge Maddock's statement that the detectives would like to talk to him. That response could be interpreted as either (1) acknowledging that he understood the police wanted an interview or (2)

---

[2] *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987)(the defendant's "limited requests for counsel" with respect to the taking of a *written* statement "were accompanied by affirmative announcements of his willingness to speak [orally] with the authorities").

[3] *Davis v. United States*, 512 U.S. 452, 459 (1994).

[4] *Barrett*, 479 U.S. at 529.

[5] *Id.* at 529 n.3 (citing *Smith v. Illinois*, 469 U.S. 91, 96 n.3 (1984)).

[6] *Davis*, 512 U.S. at 461 (emphasis added).

assenting to such an interview. In asking whether appellant "still" wanted to talk to the police, Judge Maddock indicated that she held to the second interpretation, viewing appellant's response as assenting to an interview. If Judge Maddock's interpretation is accepted, then ambiguity existed with respect to the scope of appellant's subsequent invocation of his right to counsel.[7]

Accepting Judge Maddock's interpretation may depend on the standard of review. In *Davis*, the Supreme Court held that the inquiry into whether an accused actually invoked his right to counsel (with respect to the interrogation) would be an objective one.[8] It did so in order "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations,"[9] which is similar to the Supreme Court's rationale for imposing a *de novo* review of the circumstances supporting a warrantless search or arrest.[10] But in this case, the police exercised uncommon and commendable caution in bringing Judge Maddock to appellant's hospital room. As a result, appellant's invocation of his right to counsel occurred, not in response to police interrogation, but in response to the inquiry of a neutral and detached magistrate. Despite the general rule that Fourth Amendment search and seizure issues are evaluated *de novo*, both the Supreme Court and this Court have recognized an exception with respect to a magistrate's determination of probable cause, which is reviewed under

---

[7] *See Marshall v. State*, 210 S.W.3d 618, 627-28 (Tex. Crim. App. 2006)(defendant's "no sir" response when asked whether he wanted to waive his rights created ambiguity because the defendant had re-initiated contact with the police).

[8] *Davis*, 512 U.S. at 458-59 (citing *Barrett*, 479 U.S. at 529).

[9] *Id.*

[10] *See Ornelas v. United States*, 517 U.S. 690, 697-98 (1996)("*de novo* review tends to unify precedent and will come closer to providing law enforcement officers with a defined 'set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement'").

a deferential standard.[11]  Similarly, I believe deference should be accorded to a magistrate's interpretation of the defendant's invocation of his right to counsel, either as a component of the "objective" inquiry, or perhaps as an exception to the usual practice.  Judge Maddock, who was also a Spanish-speaker, was in a position to observe appellant's tone of voice and demeanor in making her evaluation.

However, even if a *de novo* review of the circumstances were required, the circumstances surrounding appellant's initial affirmative response and his later request for counsel remain ambiguous, and Judge Maddock was justified in asking a clarifying question.  Once she did so, it became clear that appellant's invocation of his right to counsel was a limited one that did not apply to speaking with the officers.

Under these circumstances, appellant made an *initial* choice, under *Patterson v. Illinois*,[12] to confront the police without counsel.[13]  *Michigan v. Jackson*[14] is distinguishable because the Supreme Court's decision in *Jackson* "turned on the fact that the accused had asked for the help of a lawyer in dealing with the police."[15]  The Court contends that *Jackson* forecloses a conclusion that a request

---

[11]  *Ornelas*, 517 U.S. at 699; *Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004).

[12]  487 U.S. 285 (1988).

[13]  *Id.* at 291 ("Preserving the integrity of an accused's choice to communicate with police only through counsel is the essence of *Edwards* and its progeny–not barring an accused from making an *initial* election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone.  If an accused 'knowingly and intelligently' pursues the latter course, we see no reason why the uncounseled statements he then makes must be excluded at his trial.")(emphasis in original).

[14]  475 U.S. 625 (1988).

[15]  *Patterson*, 487 U.S. at 291 (brackets and internal quotation marks omitted).

for appointed counsel before a magistrate could be construed as embracing only a future trial rather police interrogation.[16] But the cited passage in *Jackson* simply made the point that an accused's invocation of his right to counsel should be given a "broad, rather than narrow, interpretation."[17] An accused "should not be expected to articulate exactly why or for what purposes he is seeking counsel,"[18] but if he articulates the boundaries of his right to counsel, then those boundaries can be respected and enforced by the courts. Because appellant's initial request for counsel was a limited request that did not encompass the police interrogation, there was no need to show that he re-initiated communication.[19]

I respectfully dissent.

Filed: October 29, 2008
Publish

---

[16] Court's op. at 8 (quoting *Jackson*, 475 U.S. at 633).

[17] *Jackson*, 475 U.S. at 633.

[18] *Id.* at 633 n.7 (quoting *People v. Bladel*, 421 Mich. 39, 63, 365 N.W.2d 56, 67 (1984))

[19] *Patterson*, 487 U.S. at 290-91.